**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MOLLY KELLY, | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| v. | ) | |
| | ) | |
| EXACT SOFTWARE NORTH AMERICA, LLC, | ) | |
| Defendant. | ) | |

**COMPLAINT AT LAW**

NOW COMES Plaintiff, Molly Kelly, by her attorneys, James J. Roche & Associates, and complaining of Defendant, Exact Software North America, LLC, alleges as follows:

**JURISDICTION AND VENUE**

1.    This action arises under Title VII of the Civil Rights Act, 42 U.S.C. Section 2000(e) et seq., the Americans with Disabilities Act, 42 U.S.C. Section 12101 et seq., and the Family Medical Leave Act, 29 U.S.C. 2612 (a)(1).

2.    Plaintiff brings this action pursuant to Title VII of the Civil Rights Act, 42 U.S.C. Section 2000(e) et seq., and The Family Medical Leave Act, 29 U.S.C. 2612 (a)(1) each of which grants jurisdiction to this Court.

3.    The federal claims alleged in this complaint has sufficient substance to confer subject matter jurisdiction on this Court.

4.    The conduct of Defendant complained of in this action occurred within this judicial district.

**FACTS**

5.    The Plaintiff, Molly Kelly ("Mrs. Kelly"), is a female citizen residing in Chicago, Illinois, in the United States who was employed by Defendant, Exact Software North America, LLC ("Exact"), and ceased employment, effective **September 30, 2011,** in the Glen Ellyn, Illinois.

All of the unlawful employment practices alleged below were committed in the course of her

employment with Exact in State of Illinois, within the Northern District.

6.      That the Defendant is an "employer" with more than fifteen (15) employees in the State of

Illinois, within the meaning of Title VII of the Civil Rights Act, as amended, and is qualified

to do business and is actually doing business in the State of Illinois and Defendant's conduct

of which Mrs. Kelly's claims are based occurred in the State of Illinois, within the Northern

District.

7.      Mrs. Kelly began her employment with Defendant in April 2007.  See attached, Exhibit A.

8.      Mrs. Kelly was hired as General Manager for Defendant.  See attached, Exhibit A.

9.      Mrs. Kelly was regularly and consistently reviewed by supervisors throughout the course of

her employment with Defendant.  See attached, Group Exhibit B

10.     Following **these performance reviews, Mrs. Kelly was consistently promoted in

responsibility with Defendant.**

11.     **Specifically, Mrs. Kelly was promoted in December 2007 to General Manager of the

Midwest.  In August 2008, Mrs. Kelly was promoted to Director of Business Analytics.  In

January 2009, Mrs. Kelly was promoted to Director of Sales for the Americas.  In January

2010, Mrs. Kelly was promoted to General Manager of Macola Global Synergy for the

Americas.**

12.     **Similarly, Mrs. Kelly was consistently rewarded with increased compensation following

performance reviews by Defendant.**

13. **Specifically, Mrs. Kelly's base compensation rose from $125,000 annually in 2007 to $142,800 in 2011. Mrs. Kelly's variable compensation consistently increased from $45,000 in 2007 to $80,000 in 2011.**

14. Mrs. Kelly consistently received performance rankings of "Exceeds Expectations" or "Meets Expectations" at her annual performance reviews up until Ms. Kelly's pregnancy of 2010. See attached, Exhibit B.

15. The rewards, promotions and commendations suddenly ceased immediately following Mrs. Kelly's announcement of pregnancy to Defendant in April 2010.

16. Mrs. Kelly notified Patricia Bosco, an Exact employee, of her pregnancy on April 19, 2010.

17. Ms. Bosco subsequently announced Mrs. Kelly's pregnancy to the company the following week at an EMT meeting. Inclusive in that meeting was Mitchell Alcon and Harry Merkin.

18. Tragically, Mrs. Kelly lost her child the week of April 30, 2010, within weeks of notifying Defendant of her pregnancy.

19. Despite this tragic loss of her child, Mrs. Kelly informed Defendant that she would attempt another pregnancy in the near future.

20. Since inception of her employment through announcing her pregnancy in April 2010, Mrs. Kelly had never once received a warning, demotion, or any other reprimand from Defendant.

21. **Starting just weeks following Mrs. Kelly's decision to attempt another pregnancy, Defendant** began its calculated plan of discrimination against Mrs. Kelly.

22. In June 2010, Defendant requested a warning to be placed in Mrs. Kelly's employment file for a false allegation of failure to follow company review procedures.

23. Immediately, Mrs. Kelly challenged this attempt by Defendant as the act was committed by another employee, not her, nor were the alleged procedures ever provided to Mrs. Kelly.

24. Mrs. Kelly made a written request for this "warning" to be removed from her file based on those facts. See attached, Group Exhibit C.

25. No warning appears in her file.

26. Undeterred, in June 2010, for the first time in her career with Defendant, Defendant attempted to put Mrs. Kelly on an unattainable performance plan ("PIP").

27. Again, Mrs. Kelly challenged and objected to the unattainable PIP. See attached, Exhibit D.

28. Thereafter, Defendant modified the PIP to include very aggressive, if not unattainable PIP.

29. Regardless of this next attempt, Mrs. Kelly was notified, upon her request, that the PIP had been met. See attached, Group Exhibit E.

**30. On January 5, 2011, Mrs. Kelly was hospitalized and placed on temporary bed rest by her Obstetrician due to complications in her pregnancy.**

31. Vice President of Marketing for Defendant, Harry Merkin, responded to the hospitalization with "I don't know how Molly expects to be a GM (general manager) from bed."

32. On April 18, 2011, Mrs. Kelly submit her required Family Medical Leave Act ("FMLA") paperwork to Defendant for her upcoming maternity leave of her next pregnancy. See attached, Group Exhibit F.

33. Immediately thereafter, Mrs. Kelly was informed by Defendant that her position would not be available to her upon her return from her FMLA leave.

34. In a conversation with Mitch Alcon, her supervisor, on April 29, 2011, Defendant told Mrs. Kelly he "won't be able to train any new managers properly due to your maternity leave."

35.     Defendant told Mrs. Kelly that all general manager positions (her position) were being eliminated by the end of 2011.

36.     To date, upon information and belief, only the female general manager positions have been eliminated.

37.     Further, Mrs. Kelly's position has not been eliminated.

38.     In fact, Mrs. Kelly's position is currently filled by a male employee, Dick Emmons.

39.     Defendant "offered" Mrs. Kelly two positions that were not equivalent in pay, position, responsibility, or other terms and conditions of employment to her current position as general manager.

40.     Mrs. Kelly was only given days to make a decision on those positions.

41.     Mrs. Kelly was thirty-three (33) weeks pregnant at this time.

42.     On May 6, 2011, Mrs. Kelly expressed her concerns over the timing of her termination based on the comments of Mr. Alcon and her treatment since announcing her pregnancy.

43.     In this meeting, Mr. Alcon, raised his voice and stated "your maternity leave puts me in a tough situation."

44.     Pursuant to Defendant's policy, Mrs. Kelly immediately informed her superior at Defendant in writing of her concerns and suspicions regarding the timing of her termination and FMLA request.  See attached, Exhibit G.

45.     The previously "offered" positions then became unavailable.

46.     Upon information and belief, no investigations of Mrs. Kelly's complaints to Human Resources were ever done.

47.     In further compliance with Defendant's policies, Mrs. Kelly informed her superior in writing of her concerns and suspicions regarding the timing of her termination.

48.     On May 10, 2011, Mrs. Kelly sent an email to Jeroen Bruins Slot, her superior, with her concerns of unfair treatment. See attached, Exhibit H.

49.     Mrs. Kelly received no response from Mr. Slot to that email.

50.     Upon information and belief, no investigations of Mrs. Kelly's complaints to her superior were ever done.

51.     But just two (2) days later on May 13, 2011, Mrs. Kelly received written notification that Defendant would have no equivalent position for her upon her return from FMLA. See attached, Exhibit I.

52.     Mrs. Kelly was offered a "termination package" unequal in comparison to other employees terminated by Defendant.

53.     In fact, it was severely deficient.

54.     On May 31, 2011, Mrs. Kelly's tasks were terminated.

55.     Mrs. Kelly was thirty-six (36) weeks pregnant at this time.

56.     Just days later, Mrs. Kelly gave birth three (3) weeks early to her child, requiring two neonatal hospital stays immediately following her birth.

## ADMINISTRATIVE PROCEDURES

57.     Mrs. Kelly filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") (Charge No. 440-2011-05380, a copy of which is hereto attached and

incorporated herein as Exhibit A). **On September 21, 2012, the** EEOC mailed Mrs. Kelly a letter and her Right to Sue Notice (a copy of which is attached hereto and incorporated herein as Exhibit J). This suit has been timely filed within ninety (90) days of receipt of the Right to Sue letter.

## JURY TRIAL DEMANDED

58.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demand a trial by jury.

## STATEMENT OF CLAIMS

### COUNT I
### DISCRIMINATION ON THE BASIS OF SEX PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, as amended and as it appears in 42 U.S.C. Section 2000e

59.     Plaintiff re-alleges paragraphs 1-58 and incorporates them herein as paragraph 59.

60.     It is an unlawful employment practice for an employer to discharge an individual or otherwise discriminate against any individual with respect to her compensation, terms, conditions or privileges of employment because of such individual's sex. 42 U.S.C. Section 2000e-2.

61.     It is an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin. 42 U.S.C. Section 2000e-2(a)(1).

62.     It is an unlawful employment practice for an employer to limit, segregate, or classify his or her employees in any way that would deprive or tend to deprive an individual of employment

opportunities or otherwise adversely affect her status as an employee, because of such individual's sex. 42 U.S.C. Section 2000e-2(a)(2).

63. Defendant discriminated against Mrs. Kelly with respect to her compensation, terms, conditions and/or privileges of employment because of her sex, female, in violation of the Civil Rights Act.

64. Defendant terminated Mrs. Kelly because of her sex, female, in violation of the Civil Rights Act.

65. Defendant classified its employees in a way that deprived or tended to deprive Mrs. Kelly of employment opportunities because of her sex in violation of the Civil Rights Act.

66. Defendant classified its employees in a way that adversely affected her status as an employee, because of her sex, in violation of the Civil Rights Act.

67. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained economic losses, including past and future compensation, ans other economic benefits. Plaintiff has also sustained loss of financial stability, peace of mind, and future security and has suffered embarrassment, humiliation, and discomfort to her detriment and damage in amounts not fully ascertained.

68. In acting as described above, the Defendant acted oppressively, maliciously, fraudulently and outrageously towards Mrs. Kelly with conscious disregard for her known rights and with the intention of causing unjust and cruel hardship to Mrs. Kelly. In acting in a deliberate, callous and intentional manner, Mrs. Kelly seeks damages against the Defendant in an amount to punish them. Defendant intended to and did injure Mrs. Kelly. Mrs. Kelly requests the assessment of punitive damages.

WHEREFORE, Plaintiff requests that this Court:

(a) Enter a judgment that Defendant's actions, policies, practices and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured by the statutes of the United States and the Constitution, statutes and common law of Illinois;

(b) Require Defendant to restore Plaintiff to full income and benefits, including interest, that she would have received had she not been the victim of Defendant's malicious discriminatory acts;

(c) Award to Plaintiff damages for lost income and benefits at the same level as if she had been fully employed since May 31, 2011;

(d) Award to Plaintiff damages in compensation for emotional distress, anguish and humiliation suffered by her, loss of self-esteem and the ability to provide herself with the earned rewards of excellence in her chosen career;

(e) Grant to Plaintiff a judgment against Defendant for punitive or exemplary damages in a monetary award;

(f) Grant to Plaintiff a judgment against Defendant for compensatory, liquidated and consequential damages, including pain and suffering;

(g) Award to Plaintiff costs, disbursements and reasonable attorney fees; and

(h) Grant to Plaintiff such additional relief as this Court deems just and proper.


## COUNT II
## DISCRIMINATION ON THE BASIS OF PREGNANCY PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, as amended for THE PREGNANCY DISCRIMINATION ACT of 1978

69.     Plaintiff re-alleges paragraphs 1-58 and incorporates them herein as paragraph 69.

70.     It is an unlawful employment practice for an employer to discharge an individual or otherwise discriminate against any individual with respect to her compensation, terms, conditions or privileges of employment because of such individual's pregnancy.

71.     It is an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.  42 U.S.C. Section 2000e-2(a)(1). The terms "because of sex" or "on the basis of sex" include the basis of pregnancy, childbirth, or related medical conditions.

72.     It is an unlawful employment practice for an employer to limit, segregate, or classify his or her employees in any way that would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect her status as an employee, because of such individual's sex.  42 U.S.C. Section 2000e-2(a)(2).  The terms "because of sex" or "on the basis of sex" include the basis of pregnancy, childbirth, or related medical conditions.

73.     Defendant discriminated against Mrs. Kelly with respect to her compensation, terms, conditions and/or privileges of employment because of her pregnancy in violation of the Civil Rights Act.

74.     Defendant terminated Mrs. Kelly because of her pregnancy in violation of the Civil Rights Act.

75.     Defendant classified its employees in a way that deprived or tended to deprive Mrs. Kelly of employment opportunities because of her pregnancy in violation of the Civil Rights Act.

-10-

76.     Defendant classified its employees in a way that adversely affected her status as an employee, because of her pregnancy in violation of the Civil Rights Act.

77.     As a direct and proximate result of Defendant's conduct, Plaintiff has sustained economic losses, including past and future compensation, ans other economic benefits.  Plaintiff has also sustained loss of financial stability, peace of mind, and future security and has suffered embarrassment, humiliation, and discomfort to her detriment and damage in amounts not fully ascertained.

78.     In acting as described above, the Defendant acted oppressively, maliciously, fraudulently and outrageously towards Mrs. Kelly with conscious disregard for her known rights and with the intention of causing unjust and cruel hardship to Mrs. Kelly.  In acting in a deliberate, callous and intentional manner, Mrs. Kelly seeks damages against the Defendant in an amount to punish them.  Defendant intended to and did injure Mrs. Kelly.  Mrs. Kelly requests the assessment of punitive damages.

        WHEREFORE, Plaintiff requests that this Court:

        (a) Enter a judgment that Defendant's actions, policies, practices and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured by the statutes of the United States and the Constitution, statutes and common law of Illinois;

        (b) Require Defendant to restore Plaintiff to full income and benefits, including interest, that she would have received had she not been the victim of Defendant's malicious discriminatory acts;

        (c) Award to Plaintiff damages for lost income and benefits at the same level as if she had been fully employed since May 31, 2011;

(d) Award to Plaintiff damages in compensation for emotional distress, anguish and humiliation suffered by her, loss of self-esteem and the ability to provide herself with the earned rewards of excellence in her chosen career;

(e) Grant to Plaintiff a judgment against Defendant for punitive or exemplary damages in a monetary award;

(f) Grant to Plaintiff a judgment against Defendant for compensatory, liquidated and consequential damages, including pain and suffering;

(g) Award to Plaintiff costs, disbursements and reasonable attorney fees; and

(h) Grant to Plaintiff such additional relief as this Court deems just and proper.

## COUNT III
### DISCRIMINATION ON THE BASIS OF VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT 29 U.S.C. Section 2612 (a)(1)

79.     Plaintiff re-alleges paragraphs 1-58 and incorporates them herein as paragraph 79.

80.     It is an unlawful employment practice for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the Family and Medical Leave Act ("FMLA").  29 U.S.C. Section 2612 et seq.

81.      It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the FMLA. 29 U.S.C. Section 2612 et seq.

82.     Further, any eligible employee who takes leave under section 102 of FMLA for the intended purpose of the leave shall be entitled, on return from such leave to either to be restored by the employer to the position of employment held by the employee when the

leave commenced; or to be restored to an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment.

83. Mrs. Kelly was an eligible employee pursuant to FMLA.

84. Mrs. Kelly took leave pursuant to FMLA.

85. Mrs. Kelly was not restored to the position of her employment, **General Manager of the MGS** group upon return from such leave.

86. Mrs. Kelly was not restored to an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment.

87. In fact, Mrs. Kelly was informed in writing by Defendant that no comparable position was available for her upon her return from FMLA. See attached, Exhibit H.

88. Defendant discriminated against Mrs. Kelly by interfering with her rights under FMLA and her attempts to exercise these rights.

89. Defendant refused to restore Mrs. Kelly to her position of employment held at the time of her FMLA leave in violation of the Civil Rights Act.

90. Defendant failed to restore Mrs. Kelly to an equivalent position with equivalent benefits, pay and other terms and conditions of employment.

91. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained economic losses, including past and future compensation, ans other economic benefits. Plaintiff has also sustained loss of financial stability, peace of mind, and future security and has suffered embarrassment, humiliation, and discomfort to her detriment and damage in amounts not fully ascertained.

92.     As a direct and proximate result of Defendant's conduct, Plaintiff has sustained economic

losses, including past and future compensation, ans other economic benefits.  Plaintiff has

also sustained loss of financial stability, peace of mind, and future security and has

suffered embarrassment, humiliation, and discomfort to her detriment and damage in

amounts not fully ascertained.

93.     In acting as described above, the Defendant acted oppressively, maliciously, fraudulently

and outrageously towards Mrs. Kelly with conscious disregard for her known rights and

with the intention of causing unjust and cruel hardship to Mrs. Kelly.  In acting in a

deliberate, callous and intentional manner, Mrs. Kelly seeks damages against the

Defendant in an amount to punish them.  Defendant intended to and did injure Mrs.

Kelly.  Mrs. Kelly requests the assessment of punitive damages.

WHEREFORE, Plaintiff requests that this Court:

(a) Enter a judgment that Defendant's actions, policies, practices and procedures

complained of herein have violated and continue to violate the rights of Plaintiff as secured by

the statutes of the United States and the Constitution, statutes and common law of Illinois;

(b) Require Defendant to restore Plaintiff to full income and benefits that she would have

received had she not been the victim of Defendant's malicious discriminatory acts;

(c) Award to Plaintiff damages for lost income and benefits, including interest, at the

same level as if she had been fully employed since May 31, 2011;

(d) Award to Plaintiff damages in compensation for emotional distress, anguish and

humiliation suffered by her, loss of self-esteem and the ability to provide herself with the earned

rewards of excellence in her chosen career;

(e) Grant to Plaintiff a judgment against Defendant for punitive or exemplary damages in a monetary award;

(f) Grant to Plaintiff a judgment against Defendant for compensatory, liquidated and consequential damages, including pain and suffering;

(g) Award to Plaintiff costs, disbursements and reasonable attorney fees; and

(h) Grant to Plaintiff such additional relief as this Court deems just and proper.

## COUNT IV
## RETALIATION PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, as amended

94.     Plaintiff re-alleges paragraphs 1-58 and incorporates them herein as paragraph 94.

95.     Title VII of the Civil Rights Act prohibits an employer from retaliation and coercion when an employee opposes discrimination as alleged within this Complaint.

96.     Defendant discharges Mrs. Kelly effective May 31, 2012 for openly opposing the discrimination based on her sex, pregnancy and violations of FMLA by the Defendant.

97.     Mrs. Kelly's opposition to the discrimination was reasonable, well documented, in compliance with Defendant's own policies and in good faith.

98.     Defendant discharged the Plaintiff following her opposition to the discrimination within such a period of time as to raise an inference of retaliatory motivation.

99.     As a direct and proximate result of Defendant's conduct, Plaintiff has sustained economic losses, including past and future compensation, ans other economic benefits.  Plaintiff has also sustained loss of financial stability, peace of mind, and future security and has suffered embarrassment, humiliation, and discomfort to her detriment and damage in amounts not fully ascertained.

100.    As a direct and proximate result of Defendant's conduct, Plaintiff has sustained economic

losses, including past and future compensation, ans other economic benefits.  Plaintiff has

also sustained loss of financial stability, peace of mind, and future security and has

suffered embarrassment, humiliation, and discomfort to her detriment and damage in

amounts not fully ascertained.

101.    In acting as described above, the Defendant acted oppressively, maliciously, fraudulently

and outrageously towards Mrs. Kelly with conscious disregard for her known rights and

with the intention of causing unjust and cruel hardship to Mrs. Kelly.  In acting in a

deliberate, callous and intentional manner, Mrs. Kelly seeks damages against the

Defendant in an amount to punish them.  Defendant intended to and did injure Mrs.

Kelly.  Mrs. Kelly requests the assessment of punitive damages.

WHEREFORE, Plaintiff requests that this Court:

(a) Enter a judgment that Defendant's actions, policies, practices and procedures complained

of herein have violated and continue to violate the rights of Plaintiff as secured by the statutes of the

United States and the Constitution, statutes and common law of Illinois;

(b) Require Defendant to restore Plaintiff to full income and benefits that she would have

received had she not been the victim of Defendant's malicious discriminatory acts;

(c) Award to Plaintiff damages for lost income and benefits, including interest, at the same

level as if she had been fully employed since May 31, 2011;

(d) Award to Plaintiff damages in compensation for emotional distress, anguish and

humiliation suffered by her, loss of self-esteem and the ability to provide herself with the earned

rewards of excellence in her chosen career;

(e) Grant to Plaintiff a judgment against Defendant for punitive or exemplary damages in a

monetary award;

(f) Grant to Plaintiff a judgment against Defendant for compensatory, liquidated and

consequential damages, including pain and suffering;

(g) Award to Plaintiff costs, disbursements and reasonable attorney fees; and

(h) Grant to Plaintiff such additional relief as this Court deems just and proper.


Respectfully submitted,

Molly Kelly

  /S/ Kelly Maloney Kachmarik_____
One of her attorneys

Kelly Maloney Kachmarik #6275425
JAMES J. ROCHE & ASSOCIATES
Attorneys for Plaintiff
642 North Dearborn Street
Chicago, IL 60654
312-335-0044
Fax: 312-335-9009
jroche@jjroche.net